MITCHELL *vs.* WORD, guardian, *et al.*

1. While by comity the wife of a non-resident who died intestate may be allowed to sue in Georgia for her year's support, there being property here, especially if there are no debts against the intestate in the state of his residence, yet the amount of her recovery will be regulated by the law of the state of intestate's domicil.

2. By the statute law of Florida a widow is entitled to dower in her husband's personal property as well as his realty.

3. In a contest over a widow's dower and year's support, the jury found the following verdict: "We, the jury, find and decree $600 00 for one year's provision for the widow and the family; and also we, the jury, find the widow is entitled to one-third of the personal property of the deceased, and that the following notes shall be considered as part of the deceased's personal property: One note on J. N. Whitner for the sum of $1,200.00, also one note on Brantley for $3,500. And we further decree that all moneys furnished the said widow by the administrator shall be charged to her, except what she has received on her land dowry:"

*Held*, that by a reasonable construction of the verdict, the jury did not find that the acceptance of the notes barred the taking of dower, but that she was entitled to the notes as part of her dower, and left open the question whether, on final settlement, she would be entitled to more.

JACKSON, Justice, dissented.

Year's support.   Administrators and executors.   Dower. Laws.   Verdict.   Before Judge UNDERWOOD.   Floyd Superior Court.   March Term, 1879.

Reported in the decision.

WRIGHT & FEATHERSTON, for plaintiff in error.

D. S. PRINTUP; ALEXANDER & WRIGHT, for defendants.

WARNER, Chief Justice.

It appears from the record in this case that T. J. Word and others, the children of D. R. Mitchell, filed their bill in Floyd superior court against Mrs. C. A. Mitchell, the widow of D. R. Mitchell, and C. D. Forsyth, the administrator. Suit brought to the January term, 1878.

The bill alleges that D. R. Mitchell died intestate in November, 1876, domiciled in the state of Florida, where he left an estate worth about $12,000.00. Administrators had been appointed there. The intestate also left an estate in Floyd county, Georgia, consisting of lands valued at about $15,000.00, and personal property worth about $5,000.00. C. D. Forsyth had been appointed administrator in Georgia. The estate was considerably in debt in Georgia; owed nothing in Florida.

For some time prior to his death the intestate had been in very bad health, and seemed conscious of his liability to die at any time. A few weeks before his death he called his wife, Mrs. C. A. Mitchell, into the room where he was and told her that he was feeling badly or strangely, and that he might die before morning, and called for writing material which was furnished him, and he left alone. In a short while after he recalled his wife, and in the presence of her little daughter Carrie, (by a former husband,) offered her the following notes:

One note on B. F. Whitner of Orange county, Florida, for $1,185.00, dated January 1, 1876, and due January 1, 1880, with interest at 8 per cent., payable annually, with this indorsement:

"I do hereby give unto my dear wife, C. A. Mitchell, this note for her individual and separate use and benefit, and direct that payment be made to her, and the mortgage on which it is founded.

Witness my hand and seal, September 26, 1876.

D. R. MITCHELL, [*Seal*]"

Also one note on J. N. Whitner for $1,200.00, dated January 1, 1876, and due January 1, 1878, with interest, indorsed as follows:

"I have given the above note to my dear wife, C. A. Mitchell, for her individual use and benefit, as part of her interest in my estate.

This 26th day of September, 1876. D. R. MITCHELL."

Also one other note on G. C. Brantley for $3,500.00, dated September 2, 1875, and due twelve months after, with interest at 10 per cent., indorsed as follows:

"I have and do hereby give the above note to my dear wife, C. A. Mitchell, for her individual use and benefit, as part provision for her. Witness my hand and seal, this 26th of September, 1876.

D. R. MITCHELL, [*Seal.*]"

The intestate stating to his wife at the time, if he should die she was provided for, handing the notes to Carrie and telling her to put them in her mother's trunk. Said notes are now held by Mrs. Mitchell, and are solvent.

That shortly after her husband's death Mrs. Mitchell moved back to Rome Ga., the former home of both parties. She here applied to the ordinary for the assignment of a year's support, as provided by the laws of Georgia. On May 9th, 1877, commissioners appointed for that purpose assessed $2,000.00 "for her support and maintenance for twelve months from the death of D. R. Mitchell, including house-rent and furniture." Complainants filed various objections to this allowance, and at the ordinary's court in August, 1877, said objections were passed upon and overruled, except that the amount allowed was reduced to $1,500.00. From this judgment of the ordinary the complainants had appealed to the superior court, and that appeal was still pending. The ordinary then passed an order that the administrator furnish the widow necessaries for her support pending the appeal, and complainants had appealed from this order also. They allege that the widow is not entitled to a year's support in Georgia, and the ordinary has no jurisdiction of the matter; also that the sum allowed was grossly excessive. That the note of B. F. Whitner, before described, was intended by the intestate as a provision in lieu of year's support; and that the notes of Brantley and J. N. Whitner were handed Mrs. Mitchell to be accounted for in the distribution of the estate, as shown by the circumstances of their delivery. These notes will more than cover all interest she may have in the estate, whether year's support or dower or both.

The prayer is for discovery; that the payment of anything towards year's support be enjoined, and her rights on

that subject settled in this case ; that Mrs. Mitchell be enjoined from collecting anything on said notes, but be required to turn them over to the administrator, or else accept them in lieu of any interest she may have in the estate ; and for general relief.

The complainants amended the foregoing bill by alleging that the before described notes on J. N. Whitner and G. C. Brantley, indorsed to Mrs. Mitchell as before stated, "were so written, indorsed and delivered to her by D. R. Mitchell in consideration of and for her entire interest as widow and heir at law in his entire estate, both real and personal, both as dower and distributive share of personalty ;" and that the note on B. F. Whitner was given in lieu of year's support. And they pray that she may be enjoined from prosecuting her claim for dower in the lands.

·The allegations in the bill are answered in detail, but the following only are material here :

The intestate, her husband, had been a citizen of Floyd county most of his life, as she herself had been.  Only a short time before his death they moved to Florida.  Immediately upon his death she came with his remains back to Georgia, where his body was interred in his family burying-ground here.  She came back to live here permanently, and this has been her home ever since.

She admits the gift to her by the intestate of the three notes on the Whitners and Brantley, and sets forth copies of said notes and their indorsements.  She was herself unwell at the time of the gift, and the intestate came to her room and handed the notes to her in bed, saying, " here are some notes which I have indorsed to you, you may need them." Respondent handed them back to him, requesting him to give them to her daughter, Carrie, to put in her trunk, which he did.  He did not say, " If I should die you are provided for," nor anything to that effect.

She denies that either or any of said notes was or were given her in lieu of year's support, or for any other purpose than as stated in the written assignments thereon.

In her answer to the amendment she states that she knows of no fact or circumstance on which the complainants could base their allegation that said notes were given in lieu of her entire interest in the estate. There was no writing of any kind other than the indorsements conveying the notes to her, or pertaining to the transaction in any way. The intestate said, " Here are some notes I have indorsed to you, you may need them," or words of similar import ; and that was all he ever said to her on the subject. He certainly did not say they were given in lieu of any claim she might have on his estate, and she did not so accept them. So far as she knows or has any reason to believe, and does believe, said gift was prompted purely by the generosity of her husband. He had a short time before given off to the com- plainants, his children, the bulk of his estate, the amount being, as estimated by him at the time, and as she alleges, $10,000.00 to each child or share, and which he then said was all he intended to give them ; while he had not given, and did not in his lifetime give, to respondent anything but the notes aforesaid, except some present of trifling value. She therefore distinctly and expressly denies the allegation aforesaid.

By way of cross-bill Mrs. Mitchell alleges the advance- ments to the complainants by the intestate as before stated, and prays that they be brought into hotch-pot, etc.

She also states that the laws of Florida allow the widow a year's support for herself and family out of an intestate's estate ; also, that by those laws the widow is entitled to one- third of the personal estate absolutely as part of her dower ; and that if it shall be ascertained that the intestate was domiciled in Florida at the time of his death and the per- sonal estate here is to be administered according to the laws of Florida, she prays that the court will allow her year's support and dower in the personalty as fixed by those laws.

By an amendment to this cross bill, she states that being satisfied from proofs produced by complainants on the

hearing of an application for injunction, that the intestate was domiciled in Florida at the time of his death, she joins the complainants in alleging that fact, and submits to the court that the personal estate here must therefore be administered according to the laws of that state. She details the laws of Florida upon the subject of her dower in the personal estate, and prays the court to ascertain and set apart the same to her, an inventory of the personal estate being set forth in the answer of the administrator.

Temporary injunctions were granted against the proceeding to set apart the year's support, and against the proceeding to assess money in lieu of dower in the lands. The latter injunction, however, had been by consent dissolved and the dower assessed before the trial.

The case was tried at the March term, 1879, and the jury rendered the following verdict:

"We, the jury, find and decree $600.00 for one year's provision for the widow and the family; and also we, the jury, find the widow is entitled to one-third of the personal property of the deceased, and that the following notes shall be considered as part of the deceased's personal property. One note on J. N. Whitner for the sum of $1,200.00, also one note on Brantley for the sum of $3,500.00. And we further decree that all moneys furnished the said widow by the administrator shall be charged to her, except what she has received on her land dowry."

Mrs. Mitchell moved for a new trial on the following grounds, the statement of facts and rulings in which are certified by the court below to be true:

1. That part of said verdict awarding six hundred dollars for year's support, is against the strong and decided weight of the evidence as to the proper amount which should be allowed for that purpose.

2. The court erred in charging the jury, and in ruling on the trial, that the widow of the intestate (the movant) was not entitled to the year's support (out of the estate) as allowed by the laws of this state, but that her right to

year's support was such only as the laws of the state of Florida allowed.

3. The court erred in charging the jury that by the laws of Florida the widow was allowed only a sufficient supply of provisions for herself and her family including her children and servants, for one year from the death of the intestate or grant of administration on the estate.

4. And in charging that in this case the widow could not have any allowance in lieu of the household goods authorized by the laws of Florida to be set apart to her, unless it appears from the evidence that she had been deprived by any one of her right to occupy and enjoy them as provided by said laws of Florida.

5. That part of said verdict which provides that the notes of J. N. Whitner and Brantley shall be considered as part of the personal estate of the intestate, in estimating the one-third of said personal estate awarded to the movant (the widow of the intestate), is contrary to law and to the charge of the court on that subject, and is without any evidence whatever to support it.

6. The court, after charging the jury that the laws of Florida extended the widow's dower to one-third of the personal property absolutely, besides her life estate in one-third of the lands, further charged that this was an interest cast upon the widow by operation of law, independently of any contract of the parties, and could not be defeated by any gift or provision made by the husband by deed or will, unless such provision was expressly in lieu of such dower, and the widow had elected so to accept the same. That the gift by the husband to the wife, in contemplation of death, of certain promissory notes, expressed by his written indorsements to be for her individual use and benefit, as part of her interest in his estate, and as part provision for her, would not defeat the widow's right to dower, unless the jury believe from the evidence that what was said by the parties at the time of the transfer and delivery of the notes shows that it was intended to be expressly in lieu of dower in the personal estate.

The movant complains that the last clause of said charge, beginning with the word *unless*, was error, it being incompetent, she submits, to prove by parol a provision in lieu of dower ; and, further, there being no evidence on which to base such charge.

7. Said verdict, so far as it applies to the dower in the personalty, is imperfect and incomplete, in this that it does not specify and set apart the particular items or articles of personal property which shall constitute the movant's dower in the personalty, and does not specify the value of the said notes required to be estimated as part of the personal estate in ascertaining said dower, and does not cover the issue made by the pleadings on this subject.

8. It was distinctly admitted by counsel for the complainants in the progress of the trial, that they did not call upon this defendant to account for said notes as an advancement, and agreed with counsel for this defendant that the question of advancements was not involved in the case. And counsel for this defendant stated that not regarding the question of advancements as pertinent to the case they should not introduce evidence of the advancements made by the intestate to the complainants.

The movant, therefore, complains, that the verdict in effect requiring her to account for said notes as an advancement was improper and illegal.

The evidence, apart from the answer of Mrs. Mitchell, was confined mostly to the question of the year's support. A schedule of the personal property in which she claimed dower, was put in evidence.

C. D. Forsyth, the administrator, testified that when he was appointed administrator, the entire estate here and in Florida, was estimated by the complainants at $40,000.00. The estate here was appraised at $20,000.00, though from sales made he thought it would fall short of that 25 per cent. The debts here will reach about $4,500.00, besides expenses of administration, about $1,500.00.

Mrs. C. A. Mitchell testified that she married the in-

testate in March, 1875, and soon after went with him to Florida. Returned here in the summer. Spent both summers here before his death, which was in November, 1876; the balance of the time at his place on Lake Jesup in Orange county, Florida. The house they lived in was a nice one, containing ten rooms, and handsomely furnished, surrounded by pleasant grounds and an orange grove. They lived well. Col. Mitchell furnished all they wanted. Had good servants. Two minor children by a former husband lived with her all the time, and were supported by Col. Mitchell as if his own. When Col. M. died she came back with his remains here, and has been living here ever since.

She never applied for year's support in Florida, and has received nothing from the Florida estate. Did not bring with her any of the household goods. The Florida administrator took possession of the house and everything in it, and told her she could not have anything. She has been living in Rome ever since and has not proposed or offered to occupy the house.

She had collected only $400.00 on the Brantley note. Mr. Brantley has lately died. The B. F. Whitner note she collected by giving a discount. J. N. Whitner is insolvent, and she does not know whether the land for which his note was given can be subjected to its payment or not. She fears that she will never get anything on that note.

W. F. Ayer, J. W. Rounsaville, R. T. Hargrove and J. G. Dailey, all testified that they were commissioners appointed by the ordinary to assess the year's support for Mrs. Mitchell. They assessed $2,000.00, and now consider that a reasonable and proper amount. In making this allowance they considered the amount of the estate, which they supposed to be $40,000.00 (though some of them would make no difference if the estate was $30,000.00); they also considered the value of one year's rent of such a house as the family occupied in Florida, furnished as it was; also the fact that Mrs. M. had two minor children, and that Col.

Mitchell married her with this incumbrance; and that this incumbrance still existing, it was proper to be considered in estimating what sum would be required to enable her to live in the same style she had lived before her husband's death.

Some of them stated that the intestate was a close man in money matters, but always lived well. Owned fine brick residence before the war, and handsome furniture. Kept a carriage, etc. Since the war and after the death of his first wife he occupied a small room adjoining his law office. Witness Hargrove was very intimate with him. Just before he left for Florida, he told witness he had given his children $10,000.00 apiece, and he intended to live at his ease on what he had left. Witness knows of his buying and taking with him a good supply of fine linen, table cutlery, etc.

R. S. Norton and J. C. Rawlins, witnesses for complainants, thought $600.00 or $800.00 a proper sum for a year's support. Board at Rawlin's hotel, including lodging and attendance of servants, would cost $25.00 to $30.00 per month. Wardlaw estimated $500.00 to $600.00, and Byrd $600.00, enough for year's support.

T. J. Word testified, he is a son-in-law of intestate. He was a close, economical man, too much so, though he did furnish his family with ample supplies and lived well at home. Witness thinks $600.00 ample for year's support.

L. T. Mitchell, complainant, lived in Florida when his father died. The house his father lived in there was a framed building with six rooms below and four attic rooms with dormer-windows above. The furniture was cheap— white pine painted nicely. The house was three-quarters of a mile from a landing on Lake Jesup, in a town his father had laid off called Tuscawilla. No other houses there then. One or two built since. A store and one or two other houses were at the landing. No other settlement nearer than twelve miles except by the river or lake. His father always close and saving, never extravagant.

But two questions were insisted on in the argument here. First, whether the widow of the intestate was entitled to her year's support out of his estate in accordance with the law of Georgia, or in accordance with the law of Florida, the place of his domicil at the time of his death? Second, was the widow of the intestate, under the law of Florida, entitled to dower in the personal estate of the intestate, and if so, did the acceptance of the notes, in the record mentioned, by her in the lifetime of her husband, bar her right to claim dower in his personal estate after his death?

1. As to the first question, it is true that the year's support of the widow of the intestate by the statute law of this state, is declared to be a part of the necessary expenses of administration, but the amount thereof is to be ascertained by what the law of Florida allowed her for a year's support in that state at the time of the intestate's death. The law of this state regulates the amount which the widows of deceased intestates shall receive for their year's support when the deceased intestate was domiciled in this state at the time of his death, but not the widows of deceased intestates who were domiciled in other states at the time of their death, although the widows of such intestates may remove into this state after the death of their intestate husbands. By comity, the courts of this state will allow a widow to sue here for her year's support, especially when the intestate owed no debts in the state in which he was domiciled at the time of his death, but the amount of her recovery will be regulated by the law of the state in which her deceased husband was domiciled at the time of his death, and not by the law of this state. There was no error in the charge of the court in relation to this question in the case.

2. By the statute law of Florida, the widow of the intestate was entitled to dower in his personal estate, as well as in his real estate, and the court so charged, and we find no material error in that charge of which the widow of the intestate can justly complain, in view of the evidence in the record.

3. The jury found by their verdict that the widow was entitled to one-third of the personal property of the deceased, and that the two notes specified therein was a part of the deceased's personal property. The jury did not find by their verdict that the widow was barred of her right to dower in the intestate's personal property, but on the contrary, found that she was entitled to the same, and that the two notes which she held was part payment thereof, inasmuch as they found the same to be a part of the intestate's personal estate. The jury did not find by their verdict that the two notes was *all* that the widow was entitled to as dower out of the personal estate of her deceased husband (probably the unsettled condition of the estate did not authorize them to do that), but they did find that the two notes named in their verdict was a part of the deceased's personal property, and that she was entitled to that much of it as part of her dower, as provided by the Florida statute under which she claimed it. The verdict, as we construe it, gives the widow, unconditionally, the two notes named therein as a part of her dower in the intestate's personal estate ; how much more she may be entitled to, if any, on the final settlement of the estate, does not appear. There was no error in overruling the motion for a new trial.

Let the judgment of the court below be affirmed.

BLECKLEY, Justice, concurred, but furnished no written opinion.

JACKSON, Justice, dissented upon the ground that the year's support of the family under the law of Georgia—Code, §2571—is a part of the expenses of administration, and must therefore be regulated by the law of the forum where administration is had. Therefore, if administration be had in Georgia on the estate of a decedent who died in Florida, the amount of such support should be regulated by the law of the former state and not of the latter.

Expenses of administration in Florida have nothing to

do with expenses of administration in Georgia. What the fees of the ordinary are by the laws of Florida cannot regulate the fees of that officer in Georgia, nor can any other expenses which would be incurred by administration there on property there and be fixed by their law, control the expenses here on property here. If, therefore, the year's support be expenses of administration, and our statute so declares in plain words, Georgia law must regulate as well the value and amount of these expenses as of any other expenses of administration.

The ordinary or judge of probate of Florida, if his claim were interposed here for fees out of this property administered here, would not be entitled thereto. His claim might come in as a debt, but not as costs of administration. So Mrs. Mitchell's claim for a year's support, if it rested on Florida law, would give her no preference here—certainly none over everything in the way of debts and liens; yet it was set apart in preference to all other claims here. Why? Because it ranked under our law as expenses of administering the property here.

Support for the family is not dependent on the place where decedent died, or where he was domiciled when he died, under our statute of distribution; but goes to the widow as matter of right and as costs of administration if she lived in Georgia when the administration of the property is had.

This widow came with her husband's remains here and lives here, and her year's support must be taken out of the property administered here before its net proceeds can be otherwise disposed of. It is a claim which ranks with fees of officers and costs of administration; it ranks according to the laws of administration here; and its amount is as much fixed by that law as any other fee or costs of administration. Besides, there is no proof that she has received anything from the property in Florida; and as her domicil has been in Georgia ever since her husband's death, she will not be sent there for rent of homestead or year's sup-

port, or furniture, or aught else that she might sue for and possibly recover there. Living in Georgia before she married the decedent and at the time of the marriage, and having resided with her husband in Georgia part of every year of the marriage, it is not right to remit her to Florida for any part of her year's support, or to limit it by the narrower provisions of the laws of Florida—nor is it law.

Unquestionably the law is that the personal estate in Georgia will be distributed according to the laws of Florida, after the expenses of administration in Georgia are deducted, because the domicil of decedent was in Florida; but these expenses must be first deducted, and among these expenses our statute includes the year's support of the family of the decedent. Hence the law of the case, as he understood it, accorded with the right; and while distrustful of his judgment in view of differing with his colleagues as well as the court below, to his own mind the point seemed so clear that his duty required him to express his dissent.