## In re DICKS.

### (District Court, N. E. D. Georgia, S. D.   June 28, 1912.)

BANKRUPTCY (§ 403*)—DEATH OF BANKRUPT—WIDOW'S ALLOWANCE—AWARD.
Code 1910, § 4041, provides that among the necessary expenses of administration of a decedent's estate and to be preferred before all other debts, except as otherwise specially provided, is a provision for the support of the decedent's family to be set off either in money or property by appraisers sufficient to support and maintain them for 12 months from the date of administration according to the circumstances and standing of the family before decedent's death, keeping in view the solvency of the estate.  Bankr. Act July 1, 1898, c. 541, § 8, 30 Stat. 549 (U. S. Comp. St. 1901, p. 3425), provides that the death or insanity of the bankrupt shall not effect the proceedings, but they shall be conducted and concluded in the same manner so far as possible as though the bankrupt had not died or become insane, provided that, in case of death, the widow and children shall be entitled to all rights of dower and allowance fixed by the law of the state of the bankrupt's residence.  *Held*, that since the title of the bankrupt cast on the trustee by bankruptcy law is not an absolute one, but for distribution to pay debts, the rank and priority of which is generally determined by the law of the state, where a bankrupt died shortly after adjudication, his bankruptcy did not deprive the widow and minor children of their right to a year's support under section 4041.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 217; Dec. Dig. § 403.*]

In Bankruptcy.  In the matter of bankruptcy proceedings against L. K. Dicks.  On petition to review a referee's decision refusing to order the trustee to pay to the widow and minor children a year's support under Code Ga. 1910, § 4041.  Reversed.

On appeal, questions certified to Supreme Court by divided court.

B. B. McCowen, of Augusta, Ga., for petitioners.

Wm. H. Barrett, of Augusta, Ga., for trustee.

SPEER, District Judge.  L. K. Dicks was adjudicated a bankrupt. He died shortly thereafter, and after his trustee had been elected and qualified, but before the property comprising his estate had been sold. His widow, Mrs. M. J. Dicks, made application to the ordinary of Richmond county (the county of her residence) to have a year's support set aside for herself and four minor children under the provisions of section 4041 of the Code of Georgia of 1910.  Appraisers were duly appointed, and reported, setting aside the sum of $2,500, to be paid out of the money or property in the hands of the trustee in bankruptcy.  Application was thereupon made to the referee for an order directing the trustee to pay to the widow this sum.  The trustee resisted the application.  The referee sustained the contentions of the trustee, and denied the petition of the widow, and the controversy is now before the court on a petition for a review of the referee's finding.

The inquiry it seems must be determined by the relating portions of the Code of Georgia and of the Bankruptcy Act.  The law of Georgia providing allowances for the temporary support of families who

have been bereaved by the death of the husband or father is found in section 4041 of the Code. Under the title, "Year's Support to Family," this provides:

"Among the necessary expenses of administration, and to be preferred before all other debts, except as otherwise specially provided, is the provision for the support of the family to be ascertained as follows: upon the death of any person, testate or intestate, leaving an estate solvent or insolvent, and leaving a widow, or a widow and minor child or children * * * it shall be the duty of the ordinary, on the application of the widow * * * to appoint five discreet appraisers; and it shall be the duty of such appraisers, or a majority of them, to set apart and assign to such widow and children, or children only, either in property or money, a sufficiency from the estate for their support and maintenance for the space of twelve months from the date of administration * * * to be estimated according to the circumstances and standing of the family previously to the death of the testator or intestate, and keeping in view also the solvency of the estate. * * *"

The "ordinary" in this state is the probate court. Section 8 of the Bankruptcy Act provides:

"The death or insanity of a bankrupt shall not abate the proceedings, but the same shall be conducted and concluded in the same manner, so far as possible, as though he had not died or become insane: Provided, that in case of death the widow and children shall be entitled to all rights of dower and allowance fixed by the laws of the state of the bankrupt's residence."

The questions raised on the finding of the referee by this petition must be determined it seems by the proper interpretation to be placed upon these sections of the state and national law. It is contended for the trustee that since the "year's support" in Georgia must be set aside "from the estate" of the deceased, the latter, having been divested of his property by the adjudication in bankruptcy, died without an estate from which the year's support could be carved out. In support of this contention, several Georgia cases are cited, where the deceased had made deeds of assignment of his property before his death. By these the Supreme Court of Georgia held that he had absolutely parted with all title, and the widow could make no claim as against such property for her statutory "year's support." The distinction, however, between an absolute sale and conveyance of title by the owner when in life, and the qualified divestiture of his title by operation of law, seems quite plain.

Mr. Collier, in his useful treatise on the Law of Bankruptcy ([8th Ed.] p. 195), in discussing section 8, quoted above, remarks:

"The proviso protects all the rights, dower, and otherwise granted to the widow and children under state statutes. The clause is a new enactment, but it does not change existing law. The doctrine rests on the principle that the trustee's title is charged with the same liens and burdens, whether actual or inchoate, as was the bankrupt's. It is not material that the husband died after the vesting of the title in the trustee."

In support of this statement the learned author cites In re Slack (D. C.) 111 Fed. 523. In that case Judge Wheeler, in the district of Vermont, while enforcing the proviso of section 8, observes:

"The estate of the bankrupt, that the creditors are entitled to the benefit of, has gone to the trustee for sale and distribution of the proceeds, but not

for inheritance, or for distribution of the real estate itself. The bankrupt is not wholly disseised till the land is gone out of the estate."

This authority clearly distinguishes the question before the court from the Georgia authorities above referred to.

In the case of In re Newton (D. C.) 122 Fed. 103, may be found this clear and cogent statement by Judge Platt, of the district of Connecticut:

"Section 6 of the Bankruptcy Act takes care of the bankrupt in certain respects while he lives. Section 8 continues the machinery of the court after his death or insanity, but proceeds with caution to offer to the widow and children of the bankrupt, who shall die or become insane after the proceedings have been instituted, the fostering care of the federal tribunal just as far as the local tribunal had been authorized to go by its creator, the local Legislature, and no further. If the proceedings were abated by the death or insanity of the bankrupt, it is clear that the probate court would have had ample authority to make the allowance. But the Congress says that they shall not abate, and in the same breath says that 'the widow and children shall be entitled to all rights of dower and allowance fixed by the law of the state.'"

We hold that the year's support of the family immediately succeeding the death of its head is an "allowance" of this character. It is an allowance singularly promotive of a benevolent public policy. To no period of the life of the family could the state more wisely and justly direct and apply its fostering care; in no other is the distress so poignant, or the extremity so great. The provision of the Georgia law is then not only in harmony with the soundest public policy, but with the most tender and compassionate teachings of that holy religion which admonishes us to care for the "widow and the fatherless in their affliction."

The authority in which learned counsel for the trustee reposes his strongest reliance is In re McKenzie, 142 Fed. 383 et seq., 73 C. C. A. 483, a decision by the Circuit Court of Appeals of the Eighth Circuit. In that case, however, the dower of the widow was involved. It was not even the dower at common law, but it was the right of dower extended to the personal property by the statute of Arkansas. This provides (Kirby's Digest, § 2708):

"A widow shall be entitled as part of her dower, in her own right, to one-third of the personal estate * * * whereof the husband died seised or possessed."

Upon the construction of this statute, the court, holding that the husband did not have actual seisin or possession of the personal assets claimed by the widow, held that her right must be denied.

The statute of Georgia granting the year's support does not use the words of rigid and long ascertained import adopted by Arkansas. It declares the year's support to be "among the necessary expenses of administration, and to be preferred before all other debts," and declares that for the widow and children, or children only, the ordinary, through appraisers, shall set apart "either in property or money, a sufficiency from the estate for their support and maintenance for the space of twelve months from the date of administration." Here it is true the deceased did not die actually seised and possessed of

the values set apart for the year's support. A statutory, but not an unqualified, title to this had vested in the trustee. But can it be denied that the bankrupt living, or his family when dead, had an "estate" in the assets? While he lived, he had the right to an exemption, he had the right to propose a composition with his creditors, which the court might have ratified, and directed the trustee to reconvey the assets to him. For many years the salutary rights of the wife and children in that estate had been fixed by law. For many years, and on many occasions, the supreme appellate court of the state had reiterated the doctrine that this right is one dear to the law. As early as Cheney v. Cheney, 73 Ga. 66, 70, it had declared of the year's support:

"This court has always regarded such claims favorably, as will clearly appear, from the following cases, to which many others, if necessary, might be added: [Lang v. Hopkins] 10 Ga. 37; [Cole v. Elfe] 23 Ga. 235, 237; [Murphy v. Vaughan] 55 Ga. 361; [Rust, Johnston & Co. v. Billingslea] 44 Ga. 316; [Wilson v. Peeples] 61 Ga. 218, 221; [Mitchell v. Word] 64 Ga. 208, 221."

The creditors then dealt with the party who became bankrupt with a full knowledge of this law and the policy of the state. It is not conceivable that Congress could intend to annul a statute framed with such benignant philosophy, and designed to afford sustenance to the wife and children of the dead. Nor does this view take into account the strong dissenting opinion of Circuit Judge Adams, filed in Re McKenzie, supra, which seems to have met with approval in many quarters.

To briefly restate our view of this question, the title of the debtor cast upon the trustee by the bankruptcy law is for distribution to pay the debts. It is not an absolute title. The rank and priority of the debts are almost without exception determined by the law of the state. By the law of Georgia the year's support is to be "preferred before all other debts," with certain exceptions not material here, and the year's support must be set apart either in property or money from the estate of the deceased. The year's support is then an inchoate lien, with few exceptions, superior to the claims of creditors. It is true that the argument against this view is presented with great ingenuity and force, and other courts may reach a different conclusion.

It is related that in a great ecclesiastical convocation at Oxford, when, in profound theological debate, the powers of those heavenly ministers and messengers of grace were in jeopardy, Benjamin Disraeli, Lord Beaconsfield, arose, and exclaimed to the Primate presiding: "My Lord, I am on the side of the angels."

Let order be taken accordingly.